## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| SAMRAWIT STONER, Individually and for Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| MISSION POINT MANAGEMENT SERVICES, LLC d/b/a MISSION POINT HEALTHCARE SERVICES | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Samrawit Stoner (Stoner) brings this collective action to recover unpaid overtime and other damages from Mission Point Management Services, LLC d/b/a Mission Point Healthcare Services (Mission Point).

2.     Stoner worked for Mission Point as a Rehab Social Worker at Mission Point's Grandville facility.

3.     Like the Putative Class Members (as defined below), Stoner regularly worked more than 40 hours in a week.

4.     But Mission Point did not pay them for all the hours they worked.

5.     Instead, Mission Point automatically deducted 30 minutes a day from these employees' work time for so-called meal breaks.

6.     Stoner and the Putative Class Members were thus not paid for that time.

7.     But Mission Point fails to provide Stoner and the Putative Class Members with *bona fide* meal breaks.

8.     Instead, Mission Point requires Stoner and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

9.     Mission Point's auto-deduction policy violates the Fair Labor Standards Act (FLSA) by depriving Stoner and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

10.     Further, in addition to excluding time Stoner and the Putative Class Members worked during their unpaid "meal breaks," Mission Point also paid these employees different hourly rates depending on what type of shifts they worked (or "shift differentials") and bonuses.

11.     But Mission Point failed to include these shift differentials and bonuses in calculating Stoner and the Putative Class Members' regular rates of pay – as defined by the FLSA – for overtime purposes.

12.     Mission Point's shift differential and bonus pay scheme violates the FLSA by failing to pay Stoner and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §

1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     This Court has general personal jurisdiction over Mission Point because

Mission Point is domestic corporation headquartered in Bingham Farms, Michigan.

15.     Venue is proper because Mission Point maintains its headquarters in

Bingham Farms, Michigan. 28 U.S.C. § 1391(b)(1).

## PARTIES

16.     Stoner worked for Mission Point as a Rehab Social Worker at Mission

Point's Grandville facility from approximately February 2022 until August 2022.

17.     Throughout her employment, Mission Point classified Stoner as non-

exempt and paid her on an hourly basis.

18.     But Mission Point subjected Stoner to its common practice of

automatically deducting 30 minutes a day from her recorded work time for so-called

"meal breaks."

19.     Further, throughout her employment, Mission Point paid Stoner shift

differentials, paying her different hourly rates depending on what type of shift she

worked.

20.     But Mission Point failed to include her shift differentials in calculating

Stoner's regular rate of pay for overtime purposes.

21.     Similarly, throughout her employment, Mission Point paid Stoner bonuses.

22.     But Mission Point failed to include these bonuses in calculating Stoner's regular rate of pay for overtime purposes.

23.     Stoner's written consent is attached as **Exhibit 1**.

24.     Stoner brings this action on behalf of herself and other similarly situated hourly, non-exempt Mission Point employees who (1) were subject to Mission Point's automatic meal break deduction policy and/or (2) were paid shift differentials and/or bonuses.

25.     The first FLSA collective of similarly situated employees is defined as:

> **All hourly, non-exempt Mission Point employees who received an automatic meal period deduction at any time during the past 3 years ("Meal Break Class Members" or "Meal Break Class").**

26.     Mission Point uniformly requires all these employees to remain on-duty and perform work throughout their shifts, including their unpaid "meal breaks."

27.     Thus, Mission Point uniformly denies all these employees of overtime wages for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

28.     The second FLSA collective of similarly situated employees is defines as:

> **All hourly, non-exempt Mission Point employees who received shift differentials and/or bonuses at any time during the past 3 years ("Shift Diff Class Members" or "Shift Diff Class").**

29.     Mission Point uniformly fails to include the shift differentials and bonuses these employees receive in calculating their regular rates of pay for overtime purposes.

30.     Thus, Mission Point uniformly fails to pay all these employees overtime compensation at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

31.     The Meal Break Class Members and the Shift Diff Class Members are collectively referred to as the "Putative Class Members."

32.     Mission Point is a Michigan limited liability company that maintains its headquarters in Bingham Farms, Michigan.

33.     Mission Point may be served with process by serving its registered agent: **Hari Mali, 30700 Telegraph Road, Suite 1510, Bingham Farms, Michigan 48025**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

34.     At all relevant times, Mission Point was an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.     At all relevant times, Mission Point was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

36.     At all relevant times, Mission Point was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in

commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cellphones, and personal protective equipment – that have been moved in or produced for commerce.

37.    At all relevant times, Mission Point has had an annual gross volume of sales made or business done of not less than $500,000 each year.

38.    At all relevant times, Stoner and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

39.    Mission Point uniformly deducted 30 minutes/shift from Stoner and the Putative Class Members' wages for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

40.    As a result, Mission Point failed to pay Stoner and the Putative Class Members for this compensable work, including overtime, in violation of the FLSA.

41.    Mission Point's automatic meal break deduction policy, which deprives Stoner and the Putative Class Members of overtime compensation for the weeks in which these workers work over 40 hours, is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

42.    Further, Mission Point uniformly failed to include shift differential payments and bonuses Stoner and the Putative Class Members received in calculating these employees' regular rates of pay for overtime purposes.

43.     As a result, Mission Point failed to pay Stoner and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – in violation of the FLSA.

44.     Mission Point's shift differential and bonus pay scheme, which deprives Stoner and the Putative Class Members of overtime compensation at the proper premium rate is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

45.     Mission Point is a "full-service health care services and management company" that provides "short-term skilled nursing & rehabilitation care, long-term care, hospice care, [and] respite care" throughout Michigan.[1]

46.     Mission Point employs patient care workers, including Stoner and the Putative Class Members, to provide patient care services and treat the patients in its various facilities.

47.     Mission Point uniformly classifies these employees as non-exempt and pays them on an hourly basis.

48.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

---

[1] https://missionpointhealthcare.com/ (last visited April 4, 2023).

49.     For example, Stoner worked for Mission Point as a Rehab Social Worker at Mission Point's Grandville facility from approximately February 2022 until August 2022.

50.     As a Rehab Social Worker, Stoner's primary responsibilities included providing patient care to the patients at Mission Point's Grandville facility, such as admitting new patients, monitoring patients, tracking treatments and patient histories, assisting patients' families with completing power of attorney paperwork, preparing patients for discharge, and assisting doctors and other patient care staff.

51.     Throughout her employment, Mission Point classified Stoner as non-exempt and paid her on an hourly basis.

52.     Throughout her employment, Mission Point subjected Stoner to its common practice of automatically deducting 30 minutes from her recorded hours worked and wages each shift for meal breaks, regardless of whether she actually received a *bona fide* meal break.

53.     Stoner and the Putative Class Members performed their jobs under Mission Point's supervision, and using materials, equipment, and technology approved and supplied by Mission Point.

54.     Mission Point requires Stoner and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

55.     At the end of each pay period, Stoner and the Putative Class Members received wages from Mission Point that were determined by common systems and methods that Mission Point selected and controlled.

56.     Mission Point requires its hourly, non-exempt employees, including Stoner and the Putative Class Members, to record their hours worked using Mission Point's timeclock system.

57.     Further, Mission Point subjects its hourly, non-exempt employees, including Stoner and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

58.     Specifically, Mission Point automatically deducts 30 minutes from Stoner and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

59.     But Mission Point fails to provide Stoner and the Putative Class Members with *bona fide* meal periods.

60.     Instead, Mission Point requires Stoner and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

61.     This unpaid time is compensable under the FLSA because Mission Point knew, or should have known, that (1) Stoner and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 minutes.

62.     Mission Point failed to exercise its duty to ensure Stoner and the Putative Class Members were not performing work that Mission Point did not want performed during their unpaid "meal breaks."

63.     Despite accepting the benefits, Mission Point did not pay Stoner and the Putative Class Members for the compensable work they performed during their "meal breaks."

64.     Thus, under Mission Point's uniform automatic meal break deduction policy, Stoner and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they worked in excess of 40 hours in violation of the FLSA.

65.     Further, in addition to excluding time Stoner and the Putative Class Members worked during their unpaid "meal breaks," Mission Point also paid these employees different hourly rates depending on what type of shifts they worked (or "shift differentials") and bonuses.

66.     But Mission Point failed to include these shift differentials and bonuses in calculating Stoner and the Putative Class Members' regular rates of pay for overtime purposes.

67.     Mission Point's shift differential and bonus pay scheme violates the FLSA by failing to pay Stoner and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

68.     Mission Point knows Stoner and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Mission Point expects and requires these employees to do so.

69.     But Mission Point does not pay Stoner and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA.

70.     Stoner worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

71.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

72.     Indeed, Mission Point typically schedules Stoner and the Putative Class Members to work 8-hour shifts for up to 7 days a week.

73.     And Stoner and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and patient care responsibilities.

74.     As a result, Stoner and the Putative Class Members work in excess of 40 hours in a typical workweek.

75.     When Stoner and the Putative Class Members worked more than 40 hours in a workweek, Mission Point did not pay them 1.5 times their regular hourly rate – based on *all* renumeration received – for all overtime hours worked due to Mission Point's failure to include (1) time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek and (2) these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

76.     Mission Point knew, or should have known, it was subject to the FLSA, including its overtime provisions.

77.     Mission Point knew, or should have known, the FLSA requires it to pay employees, including Stoner and the Putative Class Members, overtime at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

78.     Mission Point knew, or should have known, Stoner and the Putative Class Members worked more than 40 hours in a week.

79.     Mission Point knew, or should have known, Stoner and the Putative Class Members regularly worked during their unpaid meal breaks because Mission Point expected and required them to do so.

80.     Mission Point knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

81.     Mission Point knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Stoner and the Putative Class Members of overtime compensation at the proper premium rate in violation of the FLSA.

82.     Nonetheless, Mission Point failed to pay Stoner and the Putative Class Members overtime at the proper premium rate for all hours these employees worked in excess of 40 hours in a workweek.

83.     Mission Point's failure to pay Stoner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

## COLLECTIVE ALLEGATIONS

84.     Stoner brings her claims as a collective action under the FLSA.

85.     The Putative Class Members were victimized by Mission Point's pattern, practice, and/or policy which is in willful violation of the FLSA.

86.     Other Putative Class Members worked with Stoner and indicated they were paid in the same manner, performed similar work, and were subject to Mission Point's same automatic meal break deduction policy.

87.     Based on her experiences with Mission Point, Stoner is aware Mission Point's illegal practices were imposed on the Putative Class Members.

88.     The Putative Class Members are similarly situated in all relevant respects.

89.     Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

90.     Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

91.     Rather, the class is held together by Mission Point's uniform automatic meal break deduction policy that systematically deprived Stoner and the Putative Class Members of overtime pay for all hours worked in excess of 40 hours in a workweek.

92.     The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

93.     The overtime owed to Stoner and the Putative Class Members will be calculated using the same records and using the same formula.

94.     Stoner's experiences are therefore typical of the experiences of the Putative Class Members.

95.    Stoner has no interests contrary to, or in conflict with, the Putative Class Members that would prevent collective treatment.

96.    Like each Putative Class Member, Stoner has an interest in obtaining the unpaid overtime wages owed under federal law.

97.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

98.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Mission Point will reap the unjust benefits of violating the FLSA.

99.    Further, even if some of the Putative Class Members could afford individual litigation against Mission Point, it would be unduly burdensome to the judicial system.

100.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

101.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

102.    Among the common questions of law and fact are:

- 15 -

a.   Whether Mission Point engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

b.   Whether Mission Point's automatic meal break deduction policy deprived Stoner and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c.   Whether Mission Point failed to pay Stoner and the Putative Class Members overtime for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks in violation of the FLSA;

d.   Whether Mission Point knew, or had reason to know, Stoner and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the FLSA;

e.   Whether Mission Point failed to include Stoner and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA;

f. Whether Mission Point failed to include Stoner and the Putative Class Members' bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the FLSA;

g. Whether Mission Point's decision to not pay Stoner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith; and

h. Whether Mission Point's violations of the FLSA were willful.

103. Stoner and the Putative Class Members sustained damages arising out of Mission Point's illegal and uniform employment policy.

104. Stoner knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

105. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Mission Point's records, and there is no detraction from the common nucleus of liability facts.

106. Therefore, the issue of damages does not preclude collective treatment.

107. Mission Point is liable under the FLSA for failing to pay overtime to Stoner and the Putative Class Members.

108.   Consistent with Mission Point's illegal automatic meal break deduction policy, Stoner and the Putative Class Members were not paid overtime compensation for all hours they worked in excess of 40 hours in a workweek.

109.   As part of its regular business practices, Mission Point intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Stoner and the Putative Class Members.

110.   Mission Point's illegal automatic meal break deduction policy deprived Stoner and the Putative Class Members of the premium overtime wages they are owed under federal law.

111.   Mission Point is aware, or should have been aware, that the FLSA requires it to pay Stoner and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

112.   There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

113.   This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

114.   Those similarly situated employees are known to Mission Point, are readily identifiable, and can be located through Mission Point's records.

## CAUSE OF ACTION
## VIOLATIONS OF THE FLSA

115.    Stoner realleges and incorporates all other paragraphs by reference.

116.    Stoner brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

117.    Mission Point violated, and is violating, the FLSA by failing to pay Stoner and the Putative Class Members overtime at rates not less than 1.5 these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 in a single workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

118.    Throughout the relevant period, Mission Point expected and required Stoner and the Putative Class Members to remain on-duty and be available to work during their unpaid meal breaks.

119.    Throughout the relevant period, Mission Point paid Stoner and the Putative Class Members shift differentials and bonuses that it failed to include in calculating these employees' regular rates of pay for overtime purposes.

120.    Stoner and the Putative Class Members have been harmed as a direct and proximate result of Mission Point's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Mission Point derived a direct and substantial benefit.

121.   Mission Point knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Stoner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked.

122.   Mission Point's failure to pay Stoner and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

123.   Accordingly, Stoner and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

### JURY DEMAND

124.   Stoner demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Stoner, individually and on behalf of the Putative Class Members, seeks the following relief:

     a.   An Order designating this action as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to

assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      An Order pursuant to Section 16(b) of the FLSA finding Mission Point liable for unpaid back wages due to Stoner and the Putative Class Members and for liquidated damages in amount equal to their unpaid compensation;

c.      Judgment awarding Stoner and the Putative Class Members all unpaid overtime and other damages available under the FLSA;

d.      An Order awarding attorney's fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Jennifer McManus*
    **Jennifer L. McManus (P65976)**
    Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjoesphson@mybackwages.com
adunlap@mybackwages.com

**William C. (Clif) Alexander\***
TX Bar No. 24064805
**Austin W. Anderson\***
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

**Richard J. (Rex) Burch\***
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

*\*Pro hac vice applications forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF AND THE PUTATIVE CLASS MEMBERS**